E. C. Hood, Appellant, vs. Abraham French & Co., Appellees.

1. A motion made in open court under Chapter 3165 of the laws of Florida, approved March 11, 1879, showing the rendition of a judgment against a corporation, the issue of execution thereon, a return of such execution *nulla bona,* and the name of a stockholder, with the amount of stock held by him in such corporation, and written notice to the stockholder of such motion, is

sufficient to require such stockholder to show cause why the execution should not issue against him.

2. The proceedings on a motion under Chapter 3165 of the laws of Florida, approved March 11, 1879, are summary before the judge of said court where motion is made.

3. A declaration made by a person while doing an act, which serves to explain or qualify it, is to be received in evidence as a part of the *res gestæ*.

4. If parties go to trial on immaterial or irrelevant issues, it is error for the court to withdraw from the consideration of the jury such immaterial or irrelevant issues.

5. It is error in the trial court to refuse to charge the jury, at the request of defendant, the law on the issues made by the pleadings in the case, when the issues so made are immaterial and irrelevant.

6. If the plaintiff joins issue upon immaterial and irrelevant pleas, the defendant has the right to have the court charge the jury upon the law of such pleas; and if the court refuse to do so, at the request of the defendant, *held* error.

7. A stockholder may discharge his liability under Chapter 3165 of the laws of Florida, approved March 11, 1879, by a voluntary payment, to the full extent of his statutory liability, of a *bona fide* claim of a creditor of the corporation. Such stockholder is not obliged to wait for the statutory proceeding before making payment in order to discharge his liability.

8. A stockholder may defeat the proceeding under Chapter 3165 of the laws of Florida, by showing a *bona fide* debt due himself from the corporation.

Appeal from the Circuit Court for Marion county.

The facts in the case are stated in the opinion of the court.

*Bullock & Burford*, for Appellant.

No Appearance for Appellee.

(Judge Call, of the Fourth Judicial Circuit, sat in the place of Mabry, C. J., who was disqualified).

CALL, Circuit Judge:

On June 16, 1888, final judgment was rendered against the Lake Weir Chautauqua & Lyceum Association, a corporation organized and existing under the laws of Florida, in favor of Abraham French & Co., in the Circuit Court in and for Marion county. On the 31st day of December, 1888, the appellees filed their motion in open court for an execution against Erastus C. Hood, as a stockholder in said corporation, on the ground that an execution on the aforesaid judgment had been returned *nulla bona*. On the 5th day of February, 1889, said Hood moved to quash said motion, on the grounds (1) that French & Co. did not show by their said motion that they were entitled to any relief against him; and (2) because French & Co.'s motion showed on its face that they were not entitled to the relief sought, or any other relief, against said Hood, as stockholder in said corporation. This motion was on the 8th of February, 1889, denied by the court, and Hood excepted. On the 28th day of February, 1889, Hood filed nine "answers or pleas," as they are styled, to the motion of French & Co., as reasons why the execution should not issue, to-wit: (1) That the stock was fully paid up, and there was nothing due thereon at the time of the rendition of the judgment and the issuance of execution. (2) That the suit was commenced, judgment rendered, and execution issued thereon subsequent to the approval of Chapter 3729 of the laws of 1887, and that said stock was fully paid up. (3) On equitable grounds, that French & Co. were at the same time seeking to have

execution issue against two other stockholders of said corporation, and that the combined executions, if they were obtained, would be more than French & Co.'s judgment, and therefore execution should issue against him for only five-sevenths, rather than for the whole. (4) On equitable grounds, that Hood paid, prior to the rendition of the judgment in the case, $500, being the full amount for five shares held by him, on another judgment rendered against the corporation, in full discharge of his liability as a stockholder, and this after judgment against the corporation and return of execution *nulla bona*. (5) On equitable grounds, that the corporation was indebted to him in the full sum of his stock for the amount paid on the judgment mentioned in the fourth plea, and offers to set off, etc. (6) That the execution, and return of the sheriff thereon, had never been filed in the clerk's office, as required by law. (7) That, at the time of the service of the notice and making the motion, no liability existed against him. (8) That the purpose for which the corporation was formed was to build, equip, and maintain a lecture hall and reading room on the side of Lake Weir, and to provide for holding, from time to time, of literary, scientific, educational, religious, and all such other exercises as may be conducive to the advancement and promotion of intelligence, virtue, and good morals, and therefore the stockholders were not liable on the motion. (9) That he was never indebted as alleged.

On the 29th day of October, 1889, issue was joined by French & Co. on all these socalled pleas or answers, and a jury impaneled to try the issues so joined, which trial resulted in a verdict for French & Co., whereupon the court rendered judgment that French

& Co. do have and recover from the appellant the sum of $500; and it is from this judgment that an appeal was taken to this court.

The appellant assigns 11 errors in this court, as follows: (1) The court erred in overruling motion to quash the proceedings for execution against him. (2) The court erred in admitting in evidence for plaintiff copy of execution against the Lake Weir Chautauqua & Lyceum Association. (3) The court erred in admitting the testimony of witness H. L. Anderson as to date of original indebtedness of the corporation upon which the judgment was obtained. (4) Because the court erred in not permitting witness Agnew to answer the following question with reference to the payment by respondent of $500 on execution in favor of John F. Dunn & Co., to-wit: "At the time this was paid, what did Hood say as to his purpose in paying it?" (5) The court erred in prefacing his written charge to the jury with the oral remarks as set forth on page 56 of bill of exceptions. (6) The court erred in charging the jury as set forth in the first subdivision of general written charge. (7) The court erred in charging the jury as set forth in the second subdivision of general written charge. (8) The court erred in charging the jury as set forth in the third subdivision of general written charge. (9) The court erred in giving the instructions requested by plaintiff in charge to the jury. (10) The court erred in refusing the first, second, third, and fourth instructions requested by respondent, respectively. (11) The court erred in overruling respondent's motion for a new trial. The grounds of the motion for a new trial are as follows: (1) The verdict was contrary to the evidence, and without sufficient evidence to support it. (2) The verdict was contrary

to law. The other grounds of the motion are covered by the assignments of error heretofore given.

The first error assigned is that the court erred in overruling the motion to quash the motion of the appellees. The use of the motion to quash seems to have been misapprehended in this case. What was there to quash? The court has as yet done nothing to quash; had issued no process; taken no steps. Mr. Abbott, in his Law Dictionary, defines "quash" to mean "to annul, overthrow, or vacate by judicial action." The court in this case could have done neither of these things. There was nothing for it to annul, overthrow, or vacate. But take this motion as in the nature of a demurrer; did the motion state sufficient matters for the court to act upon? Section 9, Chapter 3165, laws, approved March 11, 1879, provided as follows: "If any execution shall have been issued against the property or effects of any corporation, and if these can not be found whereon to levy, then such execution may be issued against any of the stokholders to an extent equal in amount to the amount of stock by him owned, together with any amount unpaid thereon: *Provided,* That no execution shall issue against any stockholder except upon order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after good and sufficient notice in writing to the person upon whom execution is desired," etc. What is essential to invoke the power of the court under this section? First, that a judgment should have been rendered against a corporation; second, that execution should have issued and been returned *nulla bona;* third, notice in writing served upon the person against whom the remedy is sought; and, fourth, the motion made

in open court in the court in which the suit or proceeding was instituted; and these things must appear in the motion.  The motion is not to be treated as the declaration in a common-law suit and subject to the strict rules applicable to common-law suits.  It merely, in effect, calls upon the person against whom it is made to show to the court any reason he has why execution should not issue against him as a stockholder in the corporation.  The motion in this case was, after stating the case, court, etc., as follows:  "Now, on this 31st day of December, 1888, come the plaintiffs in the above cause, by H. L. Anderson, their attorney, and after good and sufficient notice in writing to E. C. Hood, Esq., one of the stockholders of the above named defendant corporation, and in open court, at the special term thereof begun and holden at Ocala, Florida, on December 18, 1888, move the court for an order directing that an execution issue against said E. C. Hood to an extent equal in amount to the amount of stock in said defendant corporation by him, the said E. C. Hood, owned, to-wit, $500, to satisfy the above named plaintiffs in the sum of $585.53 damages and $2.17 costs, together with interest thereon from January 16, 1888, the date of the final judgment in said cause, together with the costs of this proceeding, an execution against said corporation having been returned *nulla bona.*"   While, probably, the motion is not worded as concisely as desirable, yet all that is necessary to invoke the action of the court is contained therein, and is amply sufficient to require one against whom it is made to exhibit to the court his objections to the issuing of the order sought.  There was no error in the ruling of the court on appellant's motion.

The second and third assignments of error are as to

the admission of the evidence at the trial of the issues. The court permitted the introduction of a copy of the execution against the defendant corporation, against the objection of the appellant. The bill of exceptions shows that it was admitted by the parties that the copy offered was a substantial copy of the original execution, and that the original was lost, and could not be found. The objections urged were: First, that it did not appear to have been returned by the sheriff to the clerk of the court, and, second, because no notice was given of intention to establish a lost paper by a substantial copy. The ruling of the court on the first ground required that the movants should first show that the original had been filed with the clerk, not necessarily by the sheriff; and this was done to the satisfaction of the court before the copy was admitted in evidence. Is it necessary that the sheriff shall with his own hands deliver an execution to the clerk after making his return thereon? Is the action of the sheriff in making his return of his actings and doings entirely nugatory, unless he delivers the same to the clerk to be filed? Is not his action in making his return on the execution, properly made and signed, and delivering the same to the attorney of the plaintiff, and the filing of such execution with the clerk by such attorney, as effective as though done by the sheriff himself? I can see no difference in principle. In this proceeding the material points are, was an execution issued on a judgment against the corporation, and was there property out of which it could be made? This last point is proven by the sheriff's return. That is what the statute requires before the judgment creditor can proceed against the stockholder. And it appears that this question is resolved as effectively by the sheriff's re-

turn on the execution when filed by plaintiff's attorney as when filed by the sheriff. As to the second ground of the objection, there does not appear anywhere any attempt to establish a lost paper. As I understand the proceedings, the plaintiff was proving the contents of a lost instrument by the introduction of an admittedly correct copy; the fact of the loss being also admitted. Appellant relies in his brief upon section 28, p. 744, McClel. Dig. (Chapter 2048, laws Fla.), to support the second ground of his objection. This section has reference to establishing lost papers, etc., against non-residents, where the proceeding is for the purpose of establishing the particular paper, and can therefore have no bearing on the objection here made. We do not see any error in the court's ruling on this objection prejudicial to the appellant.

The third assignment of error is as to the admission of the testimony of H. L. Anderson in regard to the time when the goods were sold for which this judgment was obtained. The effect of this testimony went to show that the goods were sold prior to the passage of the act of May 31, 1887, changing the liabilities of stockholders of insolvent corporations to creditors. The objection urged against this testimony was that it was immaterial. The only issue to which this evidence could have possibly been material is that made by the first and second pleas or answers, on which issue was joined. In these, however, the issue is as to the time of the commencement of the suit and rendition of the judgment, and the indebtedness of the appellant to the corporation at that time, as distinguished from the time of the incurring of the indebtedness. There was no issue as to the time at which the indebtedness was incurred. On the issues made in this case, any testi-

mony as to when the indebtedness was incurred was immaterial and irrelevant, and the objection to the testimony should have been sustained, under the issues in this case.

The fourth error assigned is the refusal of the court to permit the witness Agnew to testify as to statements made by appellant at the time of making the payment of money to Dunn & Co. It is axiomatic that the statements of a party made in his own interest can not be given in evidence in his own behalf, except in cases where such statements are a part of the *res gestœ i. e.* made at the time of the performance of the act, qualify and explain it. The declarations sought from the witness Agnew fall under this qualification, and should have been admitted as a part of the *res gestœ;* and the appellant had the same right to show by the witness Agnew the statements explanatory of and qualifying the act of payment, made at the time of such payment, as he did the act of payment. The objection should have been overruled, and the witness permitted to testify. 1 Greenl. Ev. sec. 108, and authorities cited in note a; 1 Rice, Ev. p. 390; Haynes vs. Rutter, 24 Pick. 242.

The fifth, sixth, seventh, eighth and ninth assignments of error are: First. That the court erred in prefacing his written charge by the oral remarks to the jury shown in the bill öf exceptions, as follows: "The court stated to counsel, when the motion first came up at a former term, that a question of fact would be involved as to whether or not the party proceeded against was or was not a stockholder in defendant corporation at the time of the creation of the debt upon which the judgment for plaintiff in *fi. fa.* was based, and that a jury would be necessary to determine this fact. The

pleading should have been confined to an issue of this kind, and thereby excluded the irrelevant matter set forth in the pleas in the case had a demurrer been interposed, or a motion to strike the pleas of respondent, the court would have sustained such motion." Second. That the court erred in giving this charge: "If you find from the evidence that .the plaintiffs, Abraham French & Co., obtained a judgment against the defendant, the Lake Weir Chautauqua & Lyceum Association, upon a claim or contract existing before May 31st, 1887, and that execution issued on said judgment, and was returned *nulla bona*, and if you further find from the evidence that E. C. Hood was a stockholder in said association at the time this proceeding was instituted against him, then he will be individually liable as such stockholder, and you should find in favor of the plaintiff in *fi. fa.* for the full amount of the stock owned by the said E. C. Hood, provided said amount does not exceed the amount of the execution in favor of Abraham French & Co. vs. the said Lake Weir Chautauqua & Lyceum Association." Third. The court erred in giving the following charge: "The court further instructs the jury that the act of the Legislature of March 11, 1879, under which the proceeding in this cause was instituted, was intended to give increased security to the creditors of the association or corporation organized under such act; and, as such act makes the stockholders individually liable to the creditors of the association to the extent of the stock owned by them, the court charges you that they are not discharged from such liability by paying any debt due, by judgment or otherwise, to other creditors, nor can they plead as an offset such payment, nor can they be discharged from their individual liability as stockholders

until they have fully paid the amount of the stock owned by them under the act of the Legislature in such case made and provided.'' Fourth. The court erred in giving the following charge: ''The court further instructs the jury that no understanding or arrangement between the stockholders in such association, whereby they were to be discharged from further individual liability as stockholders, would be binding upon the creditor or creditors of such association, unless such creditor or creditors were parties to such understanding or arrangement.'' Fifth. The court erred in charging the jury, at the request of the plaintiffs, as follows: ''A voluntary payment by a shareholder of any debt of the corporation after the corporation is insolvent will not release the liability of the stockholders.'' Sixth. The court erred in giving the following charge at the request of the plaintiff, to-wit: ''If the jury find from the evidence that the debt due plaintiffs was contracted prior to the act of 1887, in force May 31st, the plea of said statute will not release the defendant Hood.'' Seventh. The court erred in giving the following charge, at the request of the plaintiffs, to-wit: ''A shareholder can not be permitted to buy up debts against an insolvent corporation, and set them off against his liability to the creditors.''

The fourth and fifth pleas of the appellant made an issue as to whether the appellant had paid the amount of his stock on the judgment of Dunn & Co. after return of execution *nulla bona* before these proceedings were instituted, and also the question of offset to the amount of $500 claimed to have been paid on Dunn & Co.'s judgment as a creditor to that amount. There are two questions that arise on these pleas, by the answer to which the charges of the court, both those

given *sua sponte* and at the request of the plaintiffs, must stand or fall: First. Can a stockholder discharge his statutory liability by a voluntary payment of a *bona fide* debt to another creditor before the institution of the proceedings in the particular case; and, second, can a stockholder offset a debt due to him by the corporation in a proceeding by a creditor to enforce his statutory liability. If the answer to either or both of these questions is in the affirmative, then the foregoing charges given by the court were erroneous. Subd. b, sec. 225, Cook, Stock. Stockh. & Corp. Law, is as follows: "A stockholder who has voluntarily paid corporate debts to the full extent of his corporate liability is entitled to set up that fact; and, when such a payment was *bona fide*, it is a bar to an action to collect any further amount." In subdivision (c) of said section we find the following: "Closely related to the defense of payment, already made, there is the defense that the defendant stockholder has claims against the corporation, and that he is to be credited to that amount as a set-off." This court, in Gibbs vs. Davis, 27 Fla. 531, 8 South. Rep. 633, in passing upon the question of the liability of stockholders of corporations, says the stockholder assumes this liability as a part of his contract of subscription, and that this provision of the statute is for the purpose of giving to creditors of corporations a plain and ample remedy for the recovery of their claims. This being so, where is the inconsistency in allowing a stockholder to pay a *bona fide* debt against the corporation, and thereby discharge his statutory liability. Under the statute, he is subject to be proceeded against on the return of the execution *nulla bona*. And there can be no question that a payment

9

once made of the full amount of the statutory liability under these proceedings would discharge the stockholder's liability as to any other creditor. Why should the rule be different where the payment is made voluntarily, and without waiting for the proceedings? Can it be said that the law puts this liability upon the stockholders, and provides a method of enforcing it, but that if a stockholder *voluntarily*, and without waiting for this proceeding, does that which the statute requires, he will then be punished for his obedience by being required to pay again upon the statutory proceeding by another creditor. We can not think so. It would seem that the only theory upon which this contention could be maintained is that the liability does not attach until the special statutory proceedings are instituted. But these propositions are met by the decision of this court in Gibbs vs. Davis, *supra*. It is well settled that, in the matter of the remedy or method of enforcing the liability, the Legislature may make a change. The decisions on this question are all based upon the *contract liability* of the stockholder, assumed at the time of his subscription, and the right of the creditor to make his claim from the stockholder upon the obtaining judgment and return of execution *nulla bona*. As well say that the debtor in any other case is required to let himself be proceeded against before payment; otherwise, he will not be protected. The stockholder's contract is that he will pay the claim to the extent of his stock and unpaid subscription thereon in the event that the creditor pursues his claim to judgment against the corporation, and execution is returned *nulla bona*. And, when these events occur, his liability is complete; and a *bona fide* discharge of that liability, either by payment voluntarily

or by proceedings under the statute, will protect him. This view is sustained by Garrison vs. Howe, 17 N. Y. 458; Mathez vs. Neidig, 72 N. Y. 100; Boyd vs. Hall, 56 Ga. 563; Thompson vs. Bank, 19 Nev. 103, 7 Pac. 68, and 3 Am. St. Rep. 797, and note on page 845.

It seems equally well settled on principle and authority of adjudicated cases that a stockholder may, under statutes like that under discussion, set off against this statutory liability debts due and owing him from the corporation. The only apparent exceptions to these rules are in cases where the statutes provide this statutory liability of stockholders as a fund for *pro rata* payment of creditors' claims. In these cases it is obvious that neither a discharge of liability nor set off can be maintained without a violation of the plain legislative intent. And what we have said on this subject can apply only when the liability by statute is personal and several, and any creditor may proceed against the stockholder, as in the case of the statute under consideration. Wheeler vs. Miller, 90 N. Y. 353, text 362; Christensen vs. Colby, 43 Hun. 362.

It follows from what we have said that the trial court erred in the charges given above. These charges virtually withdrew from the jury the consideration of all the issues made by these pleas, and refused to permit them to consider the same. If the pleas set up irrelevant facts, and issue was joined thereon by movant, the appellant here was entitled to have the court charge the jury on same; and it was error in the trial court to ignore such issues in his charge, and refuse to give charges applicable thereto. The jury were sworn to try the issues made in that case, and no other issues; and it was to those issues that the evidence should

have been directed. It is the business of parties litigant to frame their pleadings properly. When a party fails or neglects to demur to faulty pleading, but takes issue thereon, he can not be allowed to withdraw the issue made thereon from the consideration of the jury sworn to try those very issues. The power to strike pleadings so framed as to prejudice the fair trial of the case, and, upon motion, to force amendment of pleadings so that the real question in issue, and material to the case, will be tried, is amply lodged in the circuit judges by the statutes of this State. The parties to the cause and their counsel must be held to some responsibility in presenting the issues to be tried; and there is no more effective method than by holding them to a strict accountability. It has frequently been decided that, however immaterial, defective, or demurrable a plea may be, if issue be joined upon the plea, and the evidence sustains it, the defendant has the right to have the court charge the jury upon such pleas. Reeves vs. Skipper, 94 Ala. 407, 10 South. Rep. 309; Investment Co. vs. Nixon, 95 Ala. 318, 10 South. Rep. 311. The requests for charges should have been granted, and the entire withdrawal of all issues made by the pleas except as to the return of the execution was error, for which the judgment must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

There was no objection made to the form of the proceedings, trial, or judgment in this proceeding; but, as the case goes back on other grounds, we deem it best to call attention to what we regard as errors therein. In the first place, the statute provided for a summary proceeding by motion made in open court for execution against the stockholder. The reasons,

if any, why the execution should. not issue, should, under this statute, have been presented to the court for his decision as to their sufficiency. It was never contemplated under the statute that the motion should be filed, and pleadings filed thereto, as in common-law cases, with all the incidents of delay. This was by motion to be tried by the judge, and not by jury. It is, under the statute, for the judge to decide whether the execution should issue. We do not mean to say that, if an issue of fact was made, the circuit judge shall not, at the request of either party, send the particular issue to be tried by jury. But in this case the proceeding seems to have been treated as an action at law—as though the stockholder had been sued. Again, the motion was for the issuance of execution against the stockholder. The verdict of the jury was for the plaintiff, "for the amount of five hundred dollars." The judgment upon this verdict followed the ordinary form, that the plaintiffs "do have and recover of and from the defendant, E. C. Hood, the sum of five hundred dollars, with the further sum of——, for costs in this behalf sustained." Clearly, the proper order in this case is that the execution issue, not a judgment at law against the stockholder. If such had been the intention of the Legislature, an action *indebitatus* would have been provided for against the stockholder, not a motion by the creditor. Under this statute, the action is against the corporation, and the judgment runs against it. The execution against the stockholder issues on this judgment, not on a judgment against the stockholder. The distinction is clearly seen in the provision of the statute for suing the stockholders in defunct corporations. There the remedy is by suit against the stockholder, not against

the corporation. The proper course of procedure in this matter is as we have above indicated. Schaeffer vs. Brewery Co. 4 Mo. App. 115.

For the reasons above set forth, the judgment is reversed, and the cause remanded for further proceedings in conformity with this opinion.